FILED
SUPERIOR COURT
OF GUAM

2022 JAN -4 PM 3: 14

CLERK OF COURT

BY:_____



## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| U.L.G., INC., a Guam corporation, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>MARY S.N. LEON GUERRERO, et al.,<br><br>Defendants. | Civil Case No. CV0776-20<br><br><br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas upon the Amended Motion to Dismiss filed by Defendants Mary S.N. Leon Guerrero and Collin Leon Guerrero. The Plaintiffs in this matter – U.L.G., a Guam corporation, Peter U. Leon Guerrero, Rita L.G. Toves, and the Estate of Bernadette L.G. Vandergrift[1] – are represented by Attorney David Lujan. Defendants Mary S.N. Leon Guerrero and Collin Leon Guerrero ("Mary" and "Collin") are represented by Attorney Joseph B. McDonald. Defendant Columbus Development Corporation ("Columbus") is represented by Attorney Anita Arriola. Defendants Phillip Schrage and Alex D.B. Lim ("Phillip" and "Alex") are represented by Attorneys Richard L. Johnson and Martin Deinhart. Attorney Bill R. Mann represents Defendant and Cross-claimant Lourdes P. San Nicolas ("Lourdes") and Defendant, Cross-claimant and Counterclaimant Pacific American Title Insurance and Escrow Company ("PATICO"). Defendants Pamela L.G.

---

[1] On April 2, 2021, the Court issued an order to substitute the late Bernadette L.G. Vandergrift with the Estate of Bernadette L.G. Vandergrift, following her death on December 22, 2021.

Sahagun and Anthony J. Leon Guerrero ("Pamela" and "Anthony") are represented by Attorney Georgette Bello Concepcion.

Having considered the arguments, pleadings and applicable law, the Court hereby **GRANTS** the dismissal of all claims in this matter against Defendants Pamela L.G. Sahagun and Anthony J. Leon Guerrero, *with prejudice*. The Court further **DENIES** the Amended Motion to Dismiss with respect to all other Defendants.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of the alleged unlawful selling of corporate assets for personal gain by Defendant Mary S.N. Leon Guerrero with the aid of all other Defendants. Mary is the widow of the late Gregory Leon Guerrero ("Gregory"), and together Mary and Gregory had a son named Collin Leon Guerrero. Compl. ¶¶ 21-22 (Oct. 19, 2020). Gregory had three siblings, to include Plaintiffs Peter, Rita, and Bernadette. *Id.* ¶ 23. Bernadette is deceased, and her Estate has been substituted in her place as Plaintiff. Gregory's father, Pedro Leon Guerrero ("Pedro"), owned a one-third interest in three real properties located in Tumon Bay (the "Properties"), which are subject to a 90-year lease. *Id.* ¶ 24. Plaintiffs allege that Pedro and his wife, Vicenta Leon Guerrero ("Vicenta"), intended that all four children would share the income generated by the Properties. *Id.* ¶ 25.

One year before his parents passed away, Gregory formed U.L.G., and title to the Properties was assigned to U.L.G. *Id.* ¶ 26. Ownership of the Properties was transferred to U.L.G. on February 8, 1993, via quitclaim deed. *Id.* ¶ 30. Gregory was issued 1,498 of U.L.G.'s 1,500 authorized shares, while his first cousins Pamela and Anthony were issued one share each. *Id.* ¶ 27. Gregory, Pamela, and Anthony were appointed as its first Directors and Gregory was elected President. *Id.* ¶ 29. After his parents' death, Gregory, through U.L.G., retained the rental income from the Properties from 1994 until his death in 2014. *Id.* ¶ 31.

After Gregory's death, Mary allegedly desired to "make things right" with Peter, Rita, and Bernadette by including them in the affairs of U.L.G. *Id.* ¶ 32. In October 2018, Peter, Rita, Bernadette, Mary, Collin, Pamela, and Anthony executed a series of documents, including assignments of shares of capital stock, which resulted in U.L.G.'s 1,500 shares being owned 25% each by Peter, Rita, Bernadette, and Mary. *Id.* ¶ 33. Peter, Rita, Bernadette, and Mary were each appointed as Director, with Peter being elected as President and Treasurer, and Mary elected as Secretary. *Id.* The stock transfers were effectuated through the following documents, which were effective on October 15, 2018:

a) an Assignment by Anthony of his one share of U.L.G. stock to Mary and Collin;
b) an Assignment by Pamela of her one share of U.L.G. stock to Mary and Collin;
c) an Assignment by Collin of his 750 shares of U.L.G. stock to Mary;
d) an Assignment by Mary of 75% of her 1,500 shares of U.L.G. stock, 25% each to Peter, Rita, and Bernadette, or 375 shares each;
e) Resolutions of the Stockholders of U.L.G., by Consent to Action Without Meeting, consenting to the foregoing Assignments of U.L.G.'s shares; electing Peter, Rita, Bernadette, and Mary as U.L.G. directors; and approving U.L.G.'s First Amended Articles of Incorporation and First Amended Bylaws; and
f) Resolutions of the U.L.G. Directors, by Consent to Action Without Meeting, consenting to the Assignments of U.L.G.'s shares; electing Peter as U.L.G.'s President and Treasurer and Mary as its Secretary; and approving U.LG.'s First Amended Articles of Incorporation and First Amended Bylaws.

*Id.* ¶ 34. U.L.G. filed its 2018 Annual Report with the Department of Revenue and Taxation ("DRT") on October 31, 2018, indicating that Peter, Mary, Rita, and Bernadette each own 375 U.L.G. shares. *Id.* ¶ 39. The First Amended Articles of Incorporation and First Amended Bylaws were also filed with DRT on October 18, 2018. *Id.* ¶ 35. The First Amended Articles of Incorporation state that the Guam Business Corporation Act applies to U.L.G. *Id.* ¶ 7.

On November 29, 2019, Mary signed and filed the 2019 Annual Report, which stated that U.L.G.'s shares are owned 749 each by Mary and Collin, and one each by Pamela and Anthony. *Id.* ¶ 39. The 2019 Annual Report also stated that Mary was U.L.G.' s President and Treasurer, and Collin its Secretary. *Id.* Peter, Rita, and Bernadette did not consent to their

shares of U.L.G. stock being transferred to Mary, Collin, Pamela, and Anthony, nor did they elect Mary as U.L.G.'s President and Treasurer or Collin as its Secretary. *Id.* ¶ 40.

On December 13, 2019, Mary executed a Warranty Deed purporting to transfer title to U.L.G.'s interest in the Properties to Defendant Columbus Development Corporation. *Id.* ¶ 41. Peter, Rita, and Bernadette did not approve or consent to the transfer. *Id.* ¶ 43. Columbus paid approximately $2 million for U.L.G.'s one-third interest, and Mary kept the proceeds for herself. *Id.* ¶¶ 47-48. The Complaint alleges that Phillip and Alex executed the Warranty Deed as the "Duly Authorized Representatives" of Columbus, although they knew that Mary did not have authority to execute the warranty deed. *Id.* ¶¶ 42, 45. Plaintiffs also claim Columbus failed to conduct a proper inquiry into the ownership of U.L.G. *Id.* ¶ 44. PATICO, acting through its representative Lourdes and Doe Insurance Company, is alleged to have also known that Mary did not have authority to transfer the Properties, but to have assisted and conspired with her to transfer the Properties in breach of her fiduciary duties. *Id.* ¶¶ 46, 67.

On October 19, 2020, Plaintiffs filed a Complaint with the Superior Court of Guam alleging five counts: (1) Rescission of the Transfer of the Properties and Restitution to U.L.G. (U.L.G. against Mary and Columbus); (2) Breach of Fiduciary Duty (U.L.G. against Mary); (3) Aiding and Abetting Breach of Fiduciary Duty (U.L.G. against all Defendants except Mary); (4) Civil Conspiracy (U.L.G. against all Defendants); and (5) Declaration of Rights (Plaintiffs against Mary, Pamela, and Anthony).

On February 23, 2021, PATICO and Lourdes filed an Answer to the Complaint and Crossclaim against Defendants Mary and Collin for indemnity and attorney's fees and expenses, and PATICO also filed a Counterclaim against U.L.G., Inc. to indemnify PATICO against reasonable attorney's fees. That same day, Defendants Columbus, Phillip and Alex filed an Answer and Cross-claim for indemnity against Defendants Mary and Collin. Plaintiff

U.L.G., Inc. filed a Reply to PATICO's Counterclaim on March 8, 2021. On April 30, 2021, Defendant Columbus filed an Amended Answer to the Complaint, as did Defendants Phillip and Alex.[2] Defendants Phillip and Alex filed a Dismissal of Cross-claim against Mary and Collin Without Prejudice on April 30, 2021. Defendants Mary and Collin filed the Answer to Cross-Claim on May 17, 2021.

On April 30, 2021, Defendants Mary and Collin filed a Motion to Dismiss Counts I, II, and III of the Complaint and Memorandum in Support of the Motion to Dismiss. They then filed the Amended Motion to Dismiss Counts I, II, III, IV and V of the Complaint and supporting memorandum on May 28, 2021. Defendants PATICO and Lourdes filed a Response to the Motion to Dismiss on June 25, 2021, arguing that if the Court agrees that the assignment of stock to Plaintiffs was not supported by consideration and invalid, then the action must be dismissed against all other Defendants, including PATICO and Lourdes. Plaintiffs filed an Opposition to Amended Motion to Dismiss on July 12, 2021. A motion hearing was held on July 20, 2021, however because the Parties had agreed to extend deadlines, no oral argument was heard. Defendants Mary and Collin filed a Reply to Plaintiffs' Opposition on July 26, 2021.

A hearing on the Amended Motion to Dismiss was held on September 9, 2021, wherein counsels requested for further briefing due to new arguments raised at the hearing. The Court granted additional time for further briefing. Mary and Collin filed the Supplemental Memorandum in Support of Motion to Dismiss on September 20, 2021, and Plaintiffs filed the Opposition to Supplemental Memorandum in Support of Motion to Dismiss on October 11, 2021. The matter was taken under advisement on October 12, 2021.

---

[2] On April 29, 2021, the Parties filed a Stipulation permitting Phillip Schrage and Alex D.B. Lim to file an Amended Answer to Plaintiffs' Complaint, as well as a Stipulation permitting Columbus Development Corporation to file an Amended Answer to Plaintiffs' Complaint.

## DISCUSSION

### I.     RULE 12(B)(6) PLEADING STANDARD.

Guam Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which relief can be granted. Guam R. Civ. P. 12(b)(6). A court may dismiss a claim "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984). A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *Guam Police Dep't v. Guam Civ. Serv. Comm'n*, 2020 Guam 12 ¶ 8. "[A] court must accept all the well-pleaded facts as true, 'construe the pleading in the light most favorable to the non-moving party, and resolve all doubts in the non-moving party's favor.'" *Id.* (quoting *First Hawaiian Bank*, 2007 Guam 2 ¶ 9 (citations omitted)). A court generally may not consider material outside the pleadings in ruling on a Rule 12(b)(6) motion, and "a Rule 12(b)(6) motion to dismiss must be converted into a Rule 56 motion for summary judgment whenever 'matters outside the pleadings' are presented to and considered by the court." *Core Tech Int'l Corp. v. Hanil Eng'g & Const. Co.*, 2010 Guam 13 ¶ 29.

### II.     MOVANTS ARE NOT ENTITLED TO DISMISSAL BASED ON THE ALLEGED LACK OF CONSIDERATION TO SUPPORT THE SHARE ASSIGNMENTS.

Defendants Mary and Collin first argue that there was insufficient consideration for the share transfers, and as such, the assignments cannot be enforced. For a contract to be enforced, Guam law requires an offer, acceptance and consideration. *Mobil Oil Guam, Inc. v. Tendido*, 2004 Guam 7 ¶ 34 (citing 18 GCA § 85102). Good consideration may include an "existing legal obligation resting upon the promisor, or a moral obligation originating in some benefit

conferred upon the promisor or prejudice suffered by the promisee . . . to an extent corresponding with the extent of the obligation...." 18 GCA § 85502. "Consideration is 'any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer....'" *Town House Dep't Stores, Inc. v. Ahn*, 2000 Guam 32, ¶ 26 (quoting 18 GCA § 85501). "When a contract does not determine the amount of the consideration . . . the consideration must be so much money as the object of the contract is reasonably worth." 18 G.C.A. § 85507.

Plaintiffs, however, argue that consideration was not needed to effectuate the share transfers as such transfers constituted a gift. 19 GCA § 41301 ("A gift is a transfer of personal property, made voluntarily, and without consideration."). Under Guam law, a gift, other than a gift in view of death, cannot be revoked. 19 GCA § 41303. Courts have found that "[w]hether a transaction is a gift is a question of fact to be determined from all the evidence." *In re Dyer*, 322 F.3d 1178, 1188 (9th Cir. 2003) (citing *Yamaha Corp. of Am. v. State Bd. of Equalization*, 86 Cal. Rptr. 2d 362, 376 (1999)); *see also Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1252 (N.D. Cal. 2017).

Based on the facts alleged, Mary agreed to transfer Peter, Rita and Bernadette shares of U.LG. because she wanted to "make things right." Compl. at ¶ 32. In order to accomplish this, Collin, Pamela and Anthony transferred their shares to Mary, and the transfers to Peter, Rita and Bernadette were then effectuated through the execution of various assignments and resolutions. *Id.* ¶¶ 33–34. The end result was that Peter, Rita, and Bernadette each were transferred 25% of U.L.G.'s shares of stock. *Id.* ¶ 39. Mary and Collin argue there was no consideration alleged to support these transfers and thus, the claims against them must be dismissed. However, the Court agrees with the Plaintiffs that under Guam law, gifts are irrevocable. Further, whether the share

transfer constitutes a gift should be decided from all the evidence, and not on a motion to dismiss when all of the well-pleaded facts are accepted as true, and the court resolves all doubt in the favor of the non-moving party. *Guam Police Dep't*, 2020 Guam 12 ¶ 8. For these reasons, the motion to dismiss on this basis is denied.

## III. MOVANTS ARE NOT ENTITLED TO DISMISSAL BECAUSE THE SHARE TRANSFER WAS NOT INVALID UNDER THE GUAM BUSINESS CORPORATION ACT.

Mary and Collin further argue that the share transfer never occurred because it would have required the transfer of stock certificates pursuant to the old General Corporation Law. Under the old General Corporation Law, stock may be transferred by delivery of a certificate endorsed by a person legally authorized to make the transfer. 18 GCA § 3101. U.L.G. was formed before the enactment of the new business code; thus the old General Corporation Law of Guam originally applied to U.L.G. *Mack v. Davis*, 2013 Guam 13, ¶ 27 (citing 18 G.C.A. § 1101.1) (finding that the new business code only applies to corporations formed after the effective date of the Guam Business Corporation Act in 2009).

However, U.L.G. adopted the new Guam Business Corporation Act (the "Act") through its First Amended Articles of Incorporation filed with the Department of Revenue and Taxation on October 18, 2018. Compl. ¶ 7; 18 GCA § 281702(b) (The Act shall apply to a corporation incorporated prior to the effective date of the Act if its articles of incorporation are amended to provide that the Act applies.). The Resolutions approving U.L.G.'s First Amended Articles of Incorporation were made effective on October 15, 2018, which is the same effective date of the Assignments of Share of Capital Stock that transferred 25% of the shares of U.L.G. each to Peter, Rita and Bernadette. Compl. ¶ 34. Because U.L.G. adopted the Act through its amended articles of incorporation, the share transfers in question are governed by the Act, rather than the old General Corporation Law.

Under the Act, "[s]hares may but need not be represented by certificates." 18 GCA § 28610(a). Pursuant to18 GCA § 28611(a), the board of directors may also authorize the issue of shares without certificates. Courts from other jurisdictions have also found that one may own interest in a corporation, even without having received stock certificates. *EMM Credit, LLC v. Remington*, 808 S.E.2d 96, 100–01 (Ga. Ct. App. 2017). "[S]hare certificates are neither necessary for, nor absolutely determinative of, share ownership. Possession of a share certificate is not essential to ownership of shares or to the exercise of shareholder's rights." 11 Fletcher Cyc. Corp. § 5094 (Westlaw updated through Sept. 2021) (footnotes omitted).

Here, Mary, Collin, Pamela, and Anthony effectuated the transfer of shares of U.L.G. stock to Peter, Rita and Bernadette through various resolutions and assignments of shares of capital stock. Even though Plaintiffs do not allege that stock certificates were exchanged, such certificates are not necessary for a transfer of shares of stock under the new Guam Business Corporation Act. Furthermore, assuming a lack of share certificates assumes facts outside of the pleadings. Thus, when construing the pleadings in the light most favorable to the Plaintiffs, Mary and Collin have failed to show that Plaintiffs can prove no set of facts entitling them to relief, and the motion to dismiss on this basis is denied.

## IV. MOVANTS ARE NOT ENTITLED TO DISMISSAL BECAUSE THE ASSIGNMENT OF STOCK WAS NOT UNILATERALLY REVOCABLE.

Mary and Collin next argue that the claims against them should be dismissed because the assignments of shares of stock without consideration are revocable. In Guam, "[a]n assignment occurs when 'there is a transfer of some identifiable interest from the assignor to the assignee.'" *Duenas v. George & Matilda Kallingal, P.C.*, 2012 Guam 4 ¶ 15 (quoting *Brandon Apparel Grp. v. Kirkland & Ellis*, 887 N.E.2d 748, 756 (Ill. App. Ct. 2008)). An assignment must include a manifestation by the owner of his intent to transfer the right to another person or

third person without further action. *Duenas*, 2012 Guam 4 ¶ 15. An assignment does not require any particular form, and "any document which sufficiently evidences the intent of the assignor to vest ownership of the subject matter of the assignment in the assignee is sufficient to effect an assignment." *Id.* (quoting *Brandon Apparel Grp.*, 887 N.E.2d at 756).

Once an assignment is made, all rights belong to the assignee, and the rights of the assignor are extinguished. *Gietzen v. Covenant RE Mgmt., Inc.*, 253 Cal. Rptr. 3d 97, 101 (Ct. App. 2019), review denied (Jan. 2, 2020). An assignment is irrevocable if it is given for consideration. *In re Hazetwood*, 43 B.R. 208, 214 (Bankr. E.D. Va. 1984) (citing *Murray on Contracts*, § 293 at 598 (rev. ed. 1974)). However, if value is not given in exchange for an assignment, it is considered gratuitous and is generally revocable. *Collier v. Greenbrier Devs., LLC*, 358 S.W.3d 195, 203 (Tenn. Ct. App. 2009) (citing E. Allan Farnsworth, *Contracts* § 11.6, p. 723 and Restatement (Second) Contracts § 332(5) (1979)).

While a gratuitous assignment is ordinarily revocable, it may become *irrevocable* "if the assignee reasonably relies on the assignment to his detriment and the assignor should have reasonably expected that such reliance might be induced." *In re Hazetwood*, 43 B.R. at 214. A gratuitous assignment may also become irrevocable if: "(a) the assignment is in a writing either signed or under seal that is delivered by the assignor; or (b) the assignment is accompanied by delivery of a writing of a type customarily accepted as a symbol or as evidence of the right assigned." *Collier*, 358 S.W.3d at 203 (citing Restatement (Second) Contracts § 332 (1979)); *see also Cascades Dev. of Minnesota, LLC v. Nat'l Specialty Ins.*, 675 F.3d 1095, 1099 (8th Cir. 2012) (citing Restatement (Second) of Contracts § 332 (1981) ("[A] gratuitous assignment is irrevocable if 'the assignment is in a writing either signed or under seal that is delivered by the assignor.'").

Here, Mary, Collin, Anthony, and Pamela executed a series of share assignments that resulted in their 1,500 shares of U.L.G. stock being owned 25% each by Peter, Rita, Bernadette and Mary. Once the assignments were executed, Plaintiffs allege that they did not consent to any further transfer of their shares to Mary, Collin, Anthony or Pamela. Even if there was no consideration, the assignments were executed in written documents evidencing the rights assigned. When resolving all doubt in favor of the non-moving parties, the Court is not persuaded that the assignments were revocable or could be unilaterally revoked.

Mary and Collin also argue that because they believe Peter, Rita and Bernadette have no ownership in U.L.G., they cannot sue on its behalf. However, the Court is not persuaded that the assignments could be unilaterally revoked. On a Rule 12(b)(6) motion to dismiss, the Court must also take the facts alleged in the Complaint as true. Here, Plaintiffs allege that Peter, Rita and Bernadette own a 75% interest in U.L.G. Compl. ¶ 40. When taking this as true, the Court is unpersuaded that this action may not be brought through U.L.G. Thus, the motion to dismiss on this basis is denied.

## V. MOVANTS ARE NOT ENTITLED TO DISMISSAL BECAUSE PLAINTIFFS ADEQUATELY STATED A CLAIM FOR CIVIL CONSPIRACY.

Mary and Collin next argue that Plaintiffs failed to state a claim for civil conspiracy upon which relief can be granted. Mary and Collin argue that claims for civil conspiracy to commit fraud are subject to a heightened pleading standard under Guam Rule of Civil Procedure 9(b) (providing that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). However, Plaintiffs contend that the civil conspiracy claim stands alone as an independent tort, and alternatively is based on the underlying tort of breach of fiduciary duty. As such, Plaintiffs argue that the heightened pleading standard for fraud does not apply. Pleadings in Guam need only contain "a short and

plaint statement of the claim showing that the pleader is entitled to relief." Guam R. Civ. P. 8(a); *Ukau v. Wang*, 2016 Guam 26 ¶ 33 (wherein the Supreme Court of Guam rejected a heightened plausibility standard and required only a liberal, notice pleading).

The Guam Supreme Court considered a claim of civil conspiracy in *Chung v. Blair Constr. Co.*, wherein the court noted that the legal doctrine of civil conspiracy is a well-settled cause of action in both federal and state law. *Chung. Chung v. Blair Constr. Co.*, 2019 Guam 28 ¶ 26. In that case, Blair Construction brought suit against Peter S. Chung seeking damages for breach of fiduciary duty, fraud and conspiracy. *Id.* ¶¶ 3-8. The Supreme Court found that the following facts supported a claim for civil conspiracy: Chung conspired with Earth Road and Earth Road's 2007 annual report listed Chung as an officer or general manager of the company; the complaint named an individual named Kwon Jung Do as a defendant because he signed the sales agreement as a seller along with Chung. *Id.* ¶ 27. The Supreme Court found that these facts were sufficient to support a claim of civil conspiracy as an independent tort. *Id.* The court further found that these facts supported a claim of civil conspiracy as a form of vicarious liability when coupled with the underlying torts of fraud and breach of fiduciary duty. *Id.*

Here, Mary and Collin argue that Plaintiffs failed to state a claim for civil conspiracy because they failed to allege facts sufficient to give the Defendants notice of: (1) their corrupt agreement with other defendants, (2) the overt act in furtherance of that corrupt agreement, (3) their intentional participation in furtherance of a plan or purpose and (4) resulting damages. However, the based on the facts alleged in the Complaint, the Court disagrees. Plaintiffs allege that they have a 75% ownership in U.L.G. Compl. ¶ 40. Despite this, Mary is alleged to have signed and filed the 2019 Annual Report, wherein she claimed that she and Collin each owned 749 of U.L.G. shares, with Pamela and Anthony each owning one share. *Id.* ¶ 39. Mary further

claimed to be U.L.G's President and Treasurer, and Collin its Secretary. *Id.* Mary allegedly sold U.L.G.'s one-third interest in the Properties to Columbus for $2,000,000 and kept all the money for herself. *Id.* ¶ 46. Peter, Rita and Bernadette did not consent to the transfer of the Properties to Columbus, and Mary and Collin allegedly misappropriated U.L.G.'s corporate funds for their own benefit. *Id.* ¶¶ 43, 48.

Plaintiffs further allege that Columbus, Phillip and Alex (the "Columbus Defendants") did not properly inquire into the ownership records of U.L.G. Compl. ¶ 44. Plaintiffs allege the Columbus Defendants executed the warranty deed with knowledge that Mary did not have authority to execute the deed, and that they conspired with her to obtain title of the Properties for Columbus. *Id.* ¶¶ 42, 45. Plaintiffs also claim the Columbus Defendants assisted and encouraged Mary to breach her fiduciary duties. *Id.* ¶¶ 45, 66.

Plaintiffs contend that Lourdes notarized the warranty deed with the signatures of Mary, Phillip, and Alex, despite knowing that Mary did not have the authority to execute the warranty deed on behalf of U.L.G. *Id.* ¶ 46. Plaintiffs claim that PATICO also knew Mary did not have authority to execute the warranty deed. *Id.* Plaintiffs further allege that Lourdes and PATICO ("PATICO Defendants") conspired with Mary to transfer the Properties to Columbus. *Id.* While Mary and Collin argue that the Complaint does not put the Defendants on notice of any overt act in furtherance of the corrupt agreement, the Complaint clearly sets forth that the Defendants allegedly assisted, encouraged and conspired with Mary to breach her fiduciary duties by executing the warranty deed and working together to transfer the Properties to Columbus. *Id.* ¶¶ 70, 72. When comparing these facts to those which supported a civil conspiracy claim in *Chung*, these facts appear to be sufficient to support a cause of action for civil conspiracy as an independent tort, or as a theory of vicarious liability when coupled with the underlying tort of breach of fiduciary duty. Unlike fraud, a claim for breach of fiduciary

duty requires only general, notice-pleading. For these reasons, the motion to dismiss on this basis is denied.

### a. Claims against Anthony and Pamela are dismissed with prejudice.

On July 27, 2021, Plaintiffs dismissed Defendants Pamela and Anthony as defendants with prejudice pursuant to Guam Rule of Civil Procedure 41(a)(1)(i) (A plaintiff may voluntarily dismiss an action "by filing notice of dismissal at any time before service by the adverse party of an answer...."). A second Notice of Dismissal was filed on December 14, 2021 after Anthony and Pamela filed an Answer on October 4, 2021. Based on the Notice of Dismissal filed by Plaintiffs, all claims against Anthony and Pamela are hereby dismissed *with prejudice*.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the dismissal of all claims in this matter against Defendants Pamela Sahagun and Anthony Leon Guerrero, *with prejudice*. The Court further **DENIES** the Amended Motion to Dismiss with respect to all other Defendants.

**IT IS SO ORDERED** ___JAN 0 4 2022___.

_____
**HONORABLE ARTHUR R. BARCINAS**
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
Lujan, Bronze, McDonald, Berman, Arriola, D. Moylan, Blair, Gumataotao
Date: 1/4/22 Time: _____
Joseph Bamba, Jr.
Deputy Clerk, Superior Court of Guam